IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | Cr. No. 3:00-626-CMC |
| v. | |
| Brian Peter Zater, | Order |
| Defendant. | |

On September 4, 2020, Defendant Brian Peter Zater ("Defendant" or "Brian Zater") filed a *pro se* motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  ECF No. 243.  He argued his sentence should be reduced to time served because of extraordinary post-sentencing actions and because, if sentenced today, his maximum sentence would be fifteen years lower.  He relied on an amendment to 18 U.S.C. § 924(c) in the First Step Act precluding consecutive sentences in his circumstances. § 924(c)(1)(C) ("In the case of a violation of this subsection *that occurs after a prior conviction under this subsection has become final*, the person shall -- (i) be sentenced to a term of imprisonment of not less than 25 years.") (emphasis added).  Although Congress did not make this amendment retroactive, Defendant argued this legislative change, coupled with his post-sentencing conduct, support a sentence reduction based on extraordinary and compelling reasons.

On September 8, 2020, the court entered an Order placing Defendant's motion in abeyance awaiting the Fourth Circuit's decision in *United States v. McCoy*, No. 20-6821 (4th Cir. June 5, 2020), or *United States v. Bryant*, No. 20-6869 (4th Cir. June 12, 2020).  ECF No. 245.  On December 2, 2020, the Fourth Circuit decided the *McCoy* appeal, unanimously affirming sentence reductions in several cases dealing with § 924(c) sentences. *United States v. McCoy*, 981 F.3d 271

(4th Cir. 2020). It held that severity and disparity in multiple § 924(c) sentences can be a factor supporting a reduction of sentence under §3582(c)(2)(A)(i) in an appropriate case. *Id.* at 286. The court thereafter lifted the stay and ordered a Government response. ECF No. 254.[1]

The Government filed a response in opposition to Defendant's motion, acknowledging the court can consider Defendant's motion on compassionate release grounds but arguing Defendant has not met the extraordinary and compelling standard and the 18 U.S.C. § 3553(a) factors weigh against release.[2] ECF No. 259. Defendant filed a reply, contending he meets the extraordinary and compelling standard, his extensive post-sentencing remorse and rehabilitation favor release, and requesting a sentence reduction to 354 months instead of a Time Served sentence of 246 months. ECF No. 262.

The court held a hearing on February 8, 2021. ECF No. 272. Defendant appeared *pro se* by video conference. This order follows.

### Discussion

1. *Background*

Over 20 years ago, Defendant, then 23, participated with others in two violent bank robberies: one in Spartanburg and the other in West Columbia, South Carolina. The group was inspired by *Heat* and *Point Break*, two bank robbery movies, and carefully planned the robberies, purchasing materials such as bullet proof vests, a police scanner, and dark clothing to wear. None could legally purchase firearms, so they recruited a straw purchaser to buy three firearms in

---

[1] Defendant filed a *pro se* motion to withdraw his compassionate release motion from abeyance. As the court had already done so, this motion (ECF No. 258) is moot.

[2] Although the Government also argued the mandate in *McCoy* had not issued at the time of its filing, the mandate issued on January 22, 2021.

Jacksonville, Florida. They planned to rob banks near interstates for quick getaways and to use stolen cars with stolen license plates as getaway vehicles. Defendant Brian Zater[3] was to have a handgun in his possession and jump the teller counter to get to the vault. At the first bank in Spartanburg, he was not able to get into the vault in time, and the robbers left with approximately $36,711 from teller drawers. At the West Columbia bank a few weeks later, Brian Zater gained access to the vault, and the robbers left with over $110,000. When dye packs exploded and emitted tear gas, they tossed the money from the getaway car. They were spotted by police and engaged in a high-speed chase through a residential neighborhood. At one point, Brian Zater jumped out of the car and fired three rounds at the officer in pursuit, before getting back into the car that ultimately crashed into an unmarked patrol car. A shootout ensued. Brian Zater fired multiple times at officers and eluded police, hiding in the neighborhood for several days. Four days later, he broke into a home, surprised the residents, and demanded, at gunpoint, they drive him to Savannah, Georgia. On the way out of the neighborhood the female hostage was able to jump from the car while the male and Brian Zater struggled over the handgun. Brian Zater jumped out of the car without the gun and ran on foot, but the male victim pursued him with the vehicle, and then chased him on foot. Law enforcement soon apprehended Brian Zater hiding in a parking lot.

Defendant was charged in a nine-count Superseding Indictment with conspiracy to commit armed bank robbery (Count 1); two counts of armed bank robbery, one involving hostage taking (Counts 2 and 5); two counts of brandishing a firearm under 18 U.S.C. § 924(c), the latter also involving discharging the firearm (Counts 3 and 6); conspiracy to possess firearms in furtherance

---

[3] Brian Zater is so identified in the factual recitation because one of the co-defendants is his brother, Ryan Zater.

of a crime of violence (Count 7); and two counts of possession of a firearm by a felon (Counts 8 and 9). He pled guilty pursuant to a Plea Agreement to one count of conspiracy to commit armed bank robbery (Count 1); armed bank robbery (Count 2); brandishing a firearm in furtherance of a crime of violence (Count 3); armed bank robbery and hostage taking (Count 5); and brandishing and discharging a firearm in furtherance of a crime of violence (Count 6). At sentencing, he received 60 months on Count 1; 210 months as to Counts 2 and 5, concurrent; 84 months as to Count 3, consecutive, and 300 months as to Count 6, consecutive, for a total of 594 months. He was sentenced to five years supervised release and ordered to pay $37,452.27 in restitution, jointly and severally with his co-defendants. Defendant appealed, but the appeal was dismissed on motion of the Government. He has filed multiple motions under § 2255 and other motions attacking his convictions. Defendant is 44 years old, has served approximately 246 months and has a projected release date of October 4, 2042.

   2. *Analysis*

The court, on motion of a defendant after 1) fully exhausting administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on his behalf, or 2) the lapse of 30 days from the receipt of such a request by the warden of the facility, whichever is earlier, may reduce the term of imprisonment. 18 U.S.C. § 3582(c)(1)(A) (as amended by First Step Act). Defendant made such a request to his warden on June 10, 2020. As thirty days have passed since that submission, Defendant's administrative remedies have been exhausted.

Section 3582(c)(a)(A)(i) allows a court to modify a term of imprisonment once it has been imposed for extraordinary and compelling reasons if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. While a Sentencing Commission Policy Statement at § 1B1.13 described categories of reasons that qualify as "extraordinary and

4

compelling," that Policy Statement was published prior to the First Step Act's amendment of § 3582(c)(1)(A)(i), and a new Policy Statement has not been issued since that amendment.[4] Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283.[5] Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)).

The *McCoy* court then agreed with a growing number of district courts that severity of and disparity in multiple § 924(c) sentences can be a factor supporting a reduction of sentence under § 3582(c)(1)(A)(i) in an appropriate case. *McCoy*, 981 F.3d at 286 ("[W]e find that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act."); *see, e.g., United States v. McClellan*, No. 1:92CR268, 2020 WL 2933588, at *3 (N.D. Oh. June 3, 2020); *United States v. Arey*, 431 F. Supp. 3d 343, 350 (W.D. Va. 2020); *United States v. McPherson,* 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020); *United States v. Defendants (Wade)*, No. 2:99-cr-00257, 2020 WL 1864906 (C.D. Cal. April 13, 2020); *United States v. Decator,* 452 F. Supp. 3d 320, 324 (D.

---

[4] The First Step Act's amendment of this section allows a defendant to move for compassionate release, as opposed to the previous scheme where only the BOP could move for such a reduction.

[5] However, the appellate court noted the policy statement remains "helpful guidance" for compassionate release motions filed by defendants. *Id.* at 282.

Md. 2020); *United States v. Chan,* No. 96-cv-00094, 2020 WL 1527895, at *6 (N.D. Cal. March 31, 2020); *United States v. Redd*, 444 F. Supp. 3d 717, 723-24 (E.D. Va. 2020); *United States v. Brown*, No. ELH-00-0100, 2020 WL 1248950 (D. Md. March 16, 2020); *United States v. Young*, 458 F. Supp. 3d 838, 848 (M.D. Tn. 2020); *United States v. O'Bryan*, No. 96-10076-003, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-758, 2020 WL 806121, (D. Utah Feb. 18, 2020); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019).

However, Defendant, as the movant, bears the burden of establishing he is entitled to a sentence reduction under § 3582(c)(1)(A). *United States v. Kannell*, No. 20-12635, 2021 WL 223485, at *1 (11th Cir. Jan. 21, 2021); *United States v. Morgan*, 473 F. Supp. 3d 544, 547 (D.S.C. 2020). And compassionate release is a rare remedy. *See, e.g.*, *United States v. White*, No. ELH-19-0034, 2020 WL 6383232, at *2 (D. Md. Oct. 30, 2020); *United States v. Mangarella*, No. FDW-06-151, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

If sentenced today, Defendant's second § 924(c) conviction would carry ten years consecutive for discharging the firearm, instead of twenty-five. His maximum sentence on the two § 924(c) counts would be 17 years instead of 32, a disparity of 15 years. The Fourth Circuit has held a sentence disparity can constitute an extraordinary and compelling reason to reduce a defendant's sentence. *McCoy*, 981 F.3d at 285 ("The severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A).").

A disparity caused by § 924(c) sentences, however, does not necessarily mean a reduction in sentence based on extraordinary and compelling reasons is appropriate. The court also considers a defendant's individual circumstances, such as relative youth at the time of the offense, substantial

sentence already served, and post-conviction rehabilitation. *McCoy*, 981 F.3d at 285-86.[6] Defendant was fairly young, 23 years old, and testified at the hearing he felt more like an "immature 13-year-old" at the time of his crimes. He has served over 20 years and shown significant remorse and rehabilitation during that period of incarceration.

### 3. *Section 3553(a) Factors*

In deciding this matter, the court must also consider the factors set forth in § 3553(a), to the extent applicable: the nature and circumstances of the offense; history and characteristics of the Defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the Defendant; provide rehabilitative services; the applicable guideline sentence; and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a). Overall, the sentence must be sufficient, but not greater than necessary, to achieve these purposes. *Id.*

### a. Nature and Circumstances of the Offense

Defendant's crimes were extremely serious. He brandished a firearm in two bank robberies and, after the second one, he and a co-defendant shot at police during a chase in a residential neighborhood, hitting two officers.[7] Defendant eluded capture for four days, broke into a home, and took two persons hostage at gunpoint in an attempt to escape. Numerous enhancements were

---

[6] Courts have found relative youth, from 19 to 24 years old at the time of offenses, to be a relevant factor under § 3582(c)(1)(A). *Id.* at 286 (citing *Zullo*, 976 F.3d at 238; *United States v. Jones*, __ F. Supp. 3d __, 2020 WL 5359636, at *7 (N.D. Cal. Aug. 27, 2020)).

[7] A stray bullet entered a residence and both officers were hit with buckshot.

7

applied in calculating his total offense level, including: a 2-level enhancement for financial institution, a 4-level enhancement due to victims sustaining serious bodily injury, a 4-level enhancement for two persons kidnapped to facilitate escape, a 2-level enhancement for carjacking, a 2-level enhancement for amount of loss, a 3-level enhancement for assaulting a police officer during flight, and a 2-level enhancement for reckless endangerment during flight.[8]

### b. History and Characteristics

Defendant was 24 years old at sentencing and had a limited criminal history, with one adult conviction for stealing stereo equipment, for which he completed probation. This resulted in a criminal history category of II. He was a high school dropout with a GED, who was married but separated, with one child. He is currently 44 years old.

### c. Need to Avoid Unwarranted Sentencing Disparities

Defendant was sentenced to 594 months, or 49.5 years. Co-defendants were also sentenced to lengthy terms of imprisonment. Defendant's brother, Ryan Zater, was sentenced to 444 months; Ryan Graves was sentenced to 454 months; and two other participants with somewhat smaller roles were sentenced to 210 and 238 months. Each sentence was significant, but the three most culpable participants, who brandished and discharged firearms, received mandatory consecutive sentences for § 924(c) convictions. The Government argued reducing Defendant's sentence would create a disparity between co-defendants, most significantly with Ryan Graves, who has not yet filed a compassionate release motion as have the Zater brothers.

---

[8] At the hearing, the Government argued against a reduction in sentence based on the heinous nature of the crime, Defendant's actions after the second robbery in attempting to avoid capture, and the impact on victims.

d. <u>Kinds of Sentences Available and Sentencing Range Established</u>

Defendant pled guilty to five counts: one count of conspiracy to commit armed bank robbery (Count 1); armed bank robbery (Count 2); brandishing a firearm in furtherance of a crime of violence (Count 3); armed bank robbery and hostage taking (Count 5); and brandishing and discharging a firearm in furtherance of a crime of violence (Count 6). Defendant's guideline range was 210-262 months for Counts 1, 2, and 5, 84 months consecutive on Count 3, and 300 months consecutive on Count 6, for a total range of 594-646 months. At the time of Defendant's sentencing, the Guidelines were mandatory. The statutory maximum on Count 1 was 60 months, Count 2 was 25 years maximum, Count 5 was 10 years to Life, and the other two counts were statutorily mandated at 84 months and 300 months, respectively, consecutive. The term of supervised release for Count 1 was not more than 3 years and for Counts 2, 3, 5, and 6, up to 5 years. Restitution, joint and several among the co-defendants, was $37,452.27, and Defendant owed a special assessment of $500.

As a result of the clarification in the First Step Act addressing multiple counts of § 924(c), defendants are no longer subject to a second, increased penalty for two (or more) § 924(c) violations occurring without an intervening conviction. Consequently, if sentenced today, Defendant would face fifteen years less on his two § 924(c) convictions.

e. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and adequately deter Defendant and others.</u>

Defendant has accepted responsibility for his crimes, and had begun his post-offense rehabilitation efforts before being sentenced. He testified at the recent hearing he was "filled with overwhelming remorse" after his crimes and "almost gave up," but decided to rededicate his life to helping others. He has paid his special assessment of $500 and $9,992.83 towards his joint and

several restitution obligation.[9] As further detailed below, Defendant's post-sentencing conduct shows considerable improvement in attitude and ability to remain free from inappropriate conduct. He has served approximately 246 months.[10]

### 4. *Post-Sentencing Conduct*

Defendant has had an outstanding record in the BOP, despite facing an almost 50-year sentence. He has had no disciplinary infractions in his over 20 years of service, even though he began serving his sentence at a high-security prison. He has led Bible study sessions with inmates, mentored difficult individuals, and served in a juvenile outreach program. He has successfully completed over 100 classes, numerous college courses, and taught other inmates. Defendant developed a 'Moving Meditation" program that has been approved by the Psychology Department at the BOP, and was accepted as a suicide watch companion. He also assisted with creating a literacy program for inmates who could not read, and taught this program along with assisting other inmates with resume writing, mock interviews, and computer skills. He has been certified by the Florida Board of Education in PC Support Services, with proficiency in Microsoft Office. He has also worked as a computer clerk with UNICOR. While at Coleman Medium, he assisted with developing the "Bridge to Reentry" program and two additional courses, "The Power of Intention" and "Advanced Writing." He taught yoga, meditation, and health and fitness classes. He has written a book with effective tools for achieving positive, lasting change, which is in the

---

[9] A total of $32,367.69 has been paid by four defendants toward the joint and several restitution obligation of $37,452.27.

[10] Given Defendant's excellent record in the BOP, he likely has a significant amount of good time credit; however, neither party informs the court of the precise amount.

process of publication by Balboa Press. Based on these experiences, he would like to work with at-risk youth or those in prison/recently released, to reduce commission of crimes or recidivism.

Positive reports from BOP staff note Defendant had an "impeccable" adjustment to confinement with positive programming and mentoring/teaching other inmates. He was viewed as well-respected by both staff and inmates, and repeatedly received good work reports. His UNICOR project manager noted he brought a "high level of adeptness" to his work, and would help "any business he's a part of operate at the highest, most competitive levels," and would be an asset to any company that hired him. He often took on "bigger projects others [we]re unwilling or unable to do." His willingness to learn was commended by Chief Project Management in 2018. He was recognized for making "both the prison environment and society safer," and worked in a position of trust he earned from his Unit Manager at Coleman Medium. He was considered an "exemplary" inmate by more than one BOP staff member. Various former inmates who were helped by Defendant also submitted letters on his behalf in support of a sentence reduction, speaking very highly of his influence on their lives and in many cases, ability to stay out of prison once released.

Defendant was transferred to medium and low security prisons years before he would normally be eligible for such a transfer, due to his outstanding conduct and contributions in the BOP. His current case manager at FCI Miami noted Defendant has not been a disciplinary problem, works constantly, and always helps out however he can, and his recidivism rate has been determined by his Unit Team to be "minimum," the lowest available. Notably, he saved another inmate's life when the individual was choking in the dining hall. He has a stable release plan to live with his parents in Atlantic Beach, Florida.

11

5. *Ruling*

After examining the § 3553(a) factors, the court concludes some reduction in sentence is appropriate in this case; however, the court will not reduce Defendant's sentence to Time Served or 354 months, as Defendant now requests.[11]  Instead, the court will remove the disparity between Defendant's sentence as imposed and what it would be if he were sentenced today, reducing the sentence to 414 months or 34.5 years.[12] As outlined above, Defendant was originally sentenced to 594 months, 15 years longer than his sentence would be if sentenced today.  He has done extremely well in the BOP, with his programming, assisting other inmates, and working in various capacities with no disciplinary infractions.  Keeping Defendant in prison for nearly 50 years, given his extensive rehabilitation and Congress' action to amend § 924(c) to remove consecutive sentences like the one imposed here, would be disproportionate and would not serve the purposes of sentencing. Although this change was not made retroactive by Congress, the court finds it appropriate to remedy a disparity when accompanied by the specific circumstances in this case of an offender who has such an outstanding record post-sentencing and by all accounts has changed his life.

---

[11] At the hearing, Defendant testified his request for 354 months, which would be a 20-year reduction in his sentence, resulted from the 15-year disparity plus five more years based on a discretionary reduction in his guideline range due to his demonstrable rehabilitation, allowable after *United States v. Booker*, 548 U.S. 220 (2004) (holding sentencing guidelines advisory), *Pepper v United States*, 562 U.S. 476 (2011) (holding courts may consider a defendant's rehabilitation in resentencing), and *Dean v. United States,* 581 U.S. __, 137 S. Ct. 1170 (2017) (holding a court could consider the severity of  mandatory sentence(s) under § 924(c) when fashioning a sentence for other counts of conviction).

[12] Although Defendant seeks a larger reduction to 354 months based on extraordinary rehabilitation, given the severity of his crimes and the potential for sentencing disparity between co-defendants, the court declines to do so.

## Conclusion

The court finds extraordinary and compelling reasons justifying relief based on the severity and disparity of the § 924(c) consecutive sentences here, considering the specific circumstances in this case. The court has assessed the § 3553(a) factors and finds such factors weigh in favor of a reduced sentence.  Accordingly, Defendant's motion to reduce sentence (ECF No. 243) is granted in part and denied in part, and his custody sentence is reduced to 414 months (60 months on Count 1, concurrent with 210 months on Counts 2 and 5, concurrent; 84 months on Count 3, consecutive; and 120 months on Count 6, consecutive) and five years' supervised release to follow, consisting of 3 years as to Count 1, and 5 years on Counts 2, 3, 5 and 6, concurrent, with standard conditions as imposed at sentencing.[13]

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
February 16, 2021

---

[13] As noted above, Defendant's motion to remove from abeyance (ECF No. 258) is moot.